# In the United States Court of Federal Claims

No. 18-342L
Filed: December 3, 2019
NOT FOR PUBLICATION

|  |  |  |
|---|---|---|
| ISA BRITTAIN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Rails-to-Trails; Fifth Amendment |
| | ) | Takings; National Trails System Act; |
| v. | ) | Georgia Property Law; Fee Simple |
| | ) | Determinable; Easement; Condemnation; |
| THE UNITED STATES, | ) | Notice of Interim Trail Use; Summary |
| | ) | Judgment; RCFC 56. |
| Defendant. | ) | |
| | ) | |

    *Steven M. Wald*, Counsel of Record, *Michael J. Smith*, Of Counsel, Stewart, Wald & McCulley LLC, Saint Louis, MO; *Thomas S. Stewart*, *Elizabeth G. McCulley*, Of Counsel, Stewart, Wald & McCulley LLC, Kansas City, MO, for plaintiffs.

    *Elizabeth McGurk*, Counsel of Record, *Jean E. Williams*, Deputy Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

GRIGGSBY, Judge

## I.      INTRODUCTION

    Plaintiffs are the landowners of certain property that is adjacent to a railroad line located in Fulton County, Georgia (the "Railroad Line").  In this rails-to-trails action brought pursuant to the National Trails Systems Act, 16 U.S.C. §§ 1241-51, plaintiffs allege a Fifth Amendment takings of their reversionary interest in certain property underlying the Railroad Line, as a result of the Surface Transportation Board's ("STB") issuance of a Notice of Interim Trail Use on February 6, 2018.  2d Am. Compl. at ¶¶ 27-30.

    The parties have filed cross-motions for partial summary judgment on liability, standing and title issues with regards to three of the parcels at issue in this dispute, pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC").  The government has also moved for partial summary judgment on standing and title issues with respect to six other

disputed parcels, pursuant to RCFC 56.  In addition, plaintiffs have filed a motion for oral argument on the parties' cross-motions.  *See generally* Pl. Mot. for Oral Arg.; Def. Resp. for Oral Arg.  For the reasons set forth below, the Court:  (1) **DENIES** plaintiffs' motion for partial summary judgment on liability; (2) **GRANTS** the government's cross-motion for partial summary judgment on standing and title issues; and (3) **DENIES** plaintiffs' motion for oral argument.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.     Factual Background

This "rails-to-trails" case involves an alleged takings of 23 parcels that are located adjacent to the Railroad Line in Fulton County, Georgia.  2d Am. Compl. at ¶¶ 6-26; *see also Lebow Land Co. v. United States*, No. 18-792L.  On December 20, 2017, CSX Transportation, Inc. ("CSXT") filed a notice of exemption to abandon the Railroad Line with the STB.  Pl. Ex. A at PLF000002.  The STB issued a Notice of Interim Trail Use on February 6, 2018.  2d Am. Compl. at ¶ 27.

#### 1.     The National Trails System Act

As background, the Interstate Commerce Act of 1887, Pub. L. No. 95-473, 92 Stat. 1337 (recodified at 49 U.S.C. §§ 1101, 1121) and the Transportation Act of 1920, ch. 91, 41 Stat. 477-78 (recodified at 49 U.S.C. § 10903), grant the Interstate Commerce Commission, now the STB, exclusive authority over the construction, operation and abandonment of the Nation's rail lines. *See Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 321 (1981).  In order for a railroad company to terminate rail service, the railroad company must obtain the consent of the STB.  *See Barclay v. United States*, 443 F.3d 1368, 1371 (Fed. Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007).  To obtain such consent, the railroad company may apply for permission to discontinue service, seek permission to terminate through abandonment proceedings, or file a

---

[1] The facts recounted in this Memorandum Opinion and Order are taken from plaintiffs' second amended complaint ("2nd Am. Compl."); plaintiffs' motion for partial summary judgment on liability ("Pl. Mot."), the memorandum in support thereof ("Pl. Mem.") and the exhibits attached thereto ("Pl. Ex."); the government's response and opposition to plaintiffs' motion for partial summary judgment on liability and cross-motion for partial summary judgment on standing and title issues ("Def. Mot.") and the exhibits attached thereto ("Def. Ex.").  Except where otherwise noted, the facts recited herein are undisputed.

request for an exemption from abandonment proceedings.  *See* 49 U.S.C. § 10903(d)(1)-(2); *Barclay*, 443 F.3d at 1371.  Once the STB consents, the rail line is removed from the national transportation system and the STB's jurisdiction comes to an end.  *Barclay*, 443 F.3d at 1371.

In 1983, Congress amended the National Trails System Act to include an alternative process for railroad companies to abandon rail lines.  16 U.S.C. § 1247(d); *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5-6 (1990) ("*Preseault I*"); *Caldwell v. United States*, 391 F.3d 1226, 1229 (2004) ("*Caldwell II*").  This process, known as "railbanking," preserves corridors or rights-of-way not in use for train service for possible future use as recreational trails.  *Caldwell II*, 391 F.3d at 1229.

In order for a rail line to be "railbanked," the railroad company must first file an abandonment application under 49 U.S.C. § 10903, or a notice of exemption from that process under 49 U.S.C. § 10502.  *See* 49 U.S.C. §§ 10502 and 10903.  Once an abandonment application, or request for an exemption, is filed, a party interested in railbanking may request the issuance of a Certificate of Interim Trail Use ("CITU") (in abandonment application proceedings) or a Notice of Interim Trail Use ("NITU") (in abandonment exemption proceedings).  49 C.F.R. § 1152.29(c)-(d).  If the railroad company indicates that it is willing to negotiate a railbanking and interim trail use agreement, the STB issues the CITU or NITU.  *Id.* The issuance of the CITU or NITU preserves the STB's jurisdiction over the rail line and allows the railroad company to discontinue operations and remove track and equipment, while the parties negotiate a railbanking and interim trail use agreement.  *Id.*; *Macy Elevator, Inc. v. United States*, 97 Fed. Cl. 708, 711-12 (2011).

The NITU or CITU affords the railroad company 180 days in which to negotiate a railbanking and interim trail use agreement with the third party.  49 C.F.R. § 1152.29(c)(1), (d)(1); *Caldwell II*, 391 F.3d at 1230.  If an agreement is reached, the NITU or CITU automatically authorizes the interim trail use.  If the STB takes no further action, the trail sponsor then may assume management of the right-of-way, subject only to the right of a railroad to reassert control of the property for restoration of rail service.  *Caldwell v. United States*, 57 Fed. Cl. 193, 195 (2003), *aff'd*, 391 F.3d 1226 (Fed. Cir. 2004) ("*Caldwell I*"); *see also* 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29(d)(2).  If no agreement is reached, the railroad company may proceed with the abandonment process.  49 C.F.R. § 1152.29(d)(1), (e)(2).

2.      **The Railroad Line**

The Railroad Line at issue in this case is a 4.4-mile-long segment of rail corridor that extends between milepost XXC 0.0 and XXC 4.4 in Fulton County, Georgia.  Pl. Ex. A at PLF000003; Def. Ex. A at STB_000038.  CSXT has operated the Railroad Line since approximately June 30, 1986, when the Atlanta and West Point Railroad Company merged into the Seaboard System Railroad, Inc. (now called CSXT).  Def. Ex. G at US_000064; *see also* Def. Mot. at 8.

CSXT is the successor-in-interest to the Atlanta Beltline Company ("ABC"), which originally acquired a property interest in the Railroad Line via two condemnation proceedings. Pl. Ex. G at PLF000060; Def. Ex. B at NARA_000032 (Parcel 26); Def. Ex. H at 1 (Parcel 4); *see also* Pl. Ex. H-1 at PLF000368-375; Pl. Ex. H-2 at PLF000310-317.  On January 4, 1900, ABC acquired via condemnation a railroad right-of-way north of the property now owned by plaintiff Soheila Sahebdivani and south of the property now owned by plaintiff Lebow Land Company, LLC.  Pl. Ex. G at PLF000052; Def. Ex. H at 1 (Parcel 4); *see also* Pl. Ex. H-1 at PLF000369-371.  Thereafter, on January 8, 1900, ABC acquired via condemnation a property interest in the portion of the Railroad Line located adjacent to land now owned by plaintiff Anderson B. Burch.  Pl. Ex. G at PLF000060; Def. Ex. B at NARA_000032 (Parcel 26); *see also* Pl. Ex. H-2 at PLF000310.

The parties agree that Section 4683 of the 1895 version of the Civil Code of the State of Georgia was in effect at the time that ABC acquired the Railroad Line via condemnation.  Pl. Mem. at 9-10; Def. Reply at 1.  This statute provides that:

> Upon the payment by the corporation or person seeking to condemn of the amount of the award and final judgment on appeal, such corporation or person shall become vested with such interest in the property taken as may be necessary to enable the corporation or person taking to exercise their franchise or conduct their business; and whenever the corporation or person shall cease using the property taken for the purpose of conducting their business, said property shall revert to the person from whom taken, his heirs or assigns.

GA. CIV. CODE § 4683 (1895).

After ABC acquired its interest in the Railroad Line via condemnation, ABC transferred its interest in the Railroad Line to the Atlanta and West Point Railroad Company on September

8, 1914.  Def. Ex. E at US_000021; Pl. Ex. G at PLF000046.  On June 30, 1986, the Atlanta and West Point Railroad Company merged into Seaboard System Railroad, Inc.  Def. Ex. G at US_000064.  Seaboard System Railroad, Inc. changed its name to CSX Transportation, Inc. on July 1, 1986.  *Id.*  On March 8, 2018, CSXT transferred its interest in the Railroad Line to Atlanta Beltline, Inc. ("ABI") through a quitclaim deed.  Def. Ex. K at US_000088.

### 3.    The Disputed Parcels[2]

The parties have filed cross-motions for partial summary judgment on liability, standing and title issues with regards to three parcels:  Parcel Number 14002200080767/Valuation Parcel Number 4/26 (the "Burch Parcel"); Parcel Number 14005500130273/Valuation Parcel Number 3/4 (the "Sahebdivani Parcel"); and Parcel Number 14005500110085/Valuation Parcel Number 3/4 (the "Lebow Parcel").  Pl. Mem. at 5, 7; Def. Mot. at 11-16.

The government has also moved for partial summary judgment on standing and title issues with respect to six additional parcels:  Parcel Number 14008800040051 (the "Butler Parcel"); Parcel Number 14008800040069 (the "Leroy Tucker Parcel"); Parcel Number 14008800040085 (the "Daniely Parcel"); Parcel Number 14008800040093 (the "Brittain Parcel"); Parcel Number 14008800040101 (the "Lassek Parcel"); and Parcel Number 14002200060371 (the "Carr Parcel") (collectively, the "Table Three Parcels").  *See generally* Def. Mot. at 16-17; Def. Ex. D at PLF000170.  The relevant title history for these parcels is set forth below.

### i.    The Burch Parcel

In 1906—approximately six years after ABC acquired the Railroad Line via condemnation—ABC acquired a fee simple interest in Parcel 25, a parcel adjoining the rail corridor to the west.  Pl. Ex. G at PLF000060; *see also* Def. Ex. C at US_000018-19.  The warranty deed conveying Parcel 25 provides, in relevant part, that:

> [T]he said party of the first part, for and in consideration of the sum of nine hundred Dollars . . . has granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey [the property] unto the said

---

[2] The parties stipulate that CSXT and its predecessors-in-interest acquired a railroad easement with respect to 14 other disputed parcels in this case.  *See* Joint Status Report, Feb. 28, 2019; *see also* Stipulations Regarding Title Matters, April 1, 2019.  These parcels are not the subject of the parties' cross-motions.

party of the second part . . . its successors heirs and assigns . . . forever, in
Fee Simple.

Def. Ex. C at US_000018.  It is undisputed that Parcel 25 includes the property that is currently
owned by plaintiff Anderson B. Burch.  Pl. Ex. E at PLF000189-190; Def. Ex. D at PLF000189-
190 (Burch deed and property map).

In 1914, ABC conveyed its interest in Parcel 25 to the Atlanta and West Point Railroad
Company.  Pl. Ex. G at PLF000046; Def. Ex. E at US_000021.  It is undisputed that the Atlanta
and West Point Railroad Company subsequently transferred this property to Joseph W. Hill in
fee simple, via a warranty deed, in 1926.  Def. Mot. at 12 (citing Def. Ex. F at US_000057-58);
*see also* Pl. Resp. at 4-12 (showing that plaintiffs do not dispute that the Atlanta and West Point
Railroad Company sold Parcel 25 to Joseph W. Hill).  It is also undisputed that the Atlanta and
West Point Railroad Company retained its fee simple interest in the portion of the Railroad Line
that adjoins Parcel 25 in connection with this transaction.  *Id.*  CSXT acquired this property
interest in 1986.  Def. Ex. G at US_000064.

### ii.      The Sahebdivani Parcel

After ABC acquired the Railroad Line via condemnation, ABC acquired a fee simple
interest in Parcel 13 from S. B. Thurman on January 9, 1900.  Def. Ex. H at 1 (Parcel 13).  A
portion of the Sahebdivani Parcel corresponds with Parcel 13.  Def. Ex. D at PLF000283,
PLF000285.

The warranty deed conveying Parcel 13 to ABC provides, in relevant part, that:

[T]he party of the first part, for and in consideration of the sum of Eighteen
hundred & no/100 Dollars . . . has granted, bargained, sold and conveyed,
and by these presents does grant, bargain, sell and convey unto the said party
of the second part its heirs and assigns, [the property] . . . in FEE SIMPLE.

Def. Ex. I at US_000015.

Also relevant to the Sahebdivani Parcel, in 1899, G.W. Adair, Jr. acquired by numerous
warranty deeds certain property identified as Parcel 18, which is located adjacent to the Railroad
Line to the south and associated with the Sahebdivani Parcel.  Pl. Ex. G at PLF000054-55; Def.
Ex. E at US_000041; Def. Ex. H at 1 (schedule of property showing eight deeds described as

Parcel 18).  G.W. Adair, Jr. subsequently transferred title to the property comprising Parcel 18 to ABC on October 31, 1899.  Pl. Ex. G at PLF000046; Def. Ex. E at US_000041.

In 1898, the Atlanta and West Point Railroad Company also acquired Parcel 19, which is located to the south of the Railroad Line, through a warranty deed from Gustavus Adolphus.  Pl. Ex. G at PLF000055; Def. Ex. H at 1 (Parcel 19).  In 1898, the Atlanta and West Point Railroad Company also acquired Parcel 20, which is located to the south of Parcel 19, through a warranty deed from Thos F. Maddox.  Pl. Ex. G at PLF000055; Def. Ex. H at 1 (Parcel 20).

CSXT eventually acquired the property owned by ABC.  Def. Ex. G at US_000064.  On October 4, 1995, CSXT transferred the property now owned by plaintiff Sahebdivani to Johnny Burnette.  Def. Ex. G at US_000060.

### iii.        The Lebow Parcel

Between January 23 and April 2, 1900, ABC acquired Parcel 17—which runs adjacent to the Railroad Line to the north and is associated with the Lebow Parcel—through a series of warranty and administrator deeds.  Pl. Ex. G at PLF000054; Def. Ex. H at 1 (Parcel 17); Def. Ex. Q at US_000007-8, US_000016-17.  Specifically, on January 23, 1900, ABC acquired a portion of Parcel 17 through warranty deed from Joseph Adolphus, Mae Evie E. Cummings, A.O. Woodward, Augustus Adolphus, Stella Adolphus and Jacob Adolphus.  Def. Ex. Q at US_000016.  This warranty deed provides, in relevant part, that:

> [T]he parties of the first part, for and in consideration of the sum of Thirteen hundred & Fifty & no/100 Dollars . . . have granted, bargained, sold and conveyed, and by these presents do grant, bargain, sell and convey unto the said party of the second part its successors and assigns [the property] . . . forever in FEE SIMPLE.

*Id.*

On January 23, 1900, ABC acquired another portion of Parcel 17 through warranty deed from Donald McDonald.  *Id.* at US_000017.  This warranty deed provides, in relevant part, that:

> [T]he party of the first part, for and in consideration of the sum of One hundred and Twelve & 50/100 Dollars . . . have granted, bargained, sold and conveyed, and by these presents does grant, bargain, sell and convey unto the said party of the second part its successors and assigns [the property] . . . forever in FEE SIMPLE.

*Id.*

On April 2, 1900, ABC acquired another portion of Parcel 17 through an administrator's deed from Donald McDonald in his role as guardian of Jennie McDonald. *Id.* at US_000007.  The administrator deed provides, in relevant part, that:

> [T]he said party of the first part, in consideration of the premises, for and in consideration of the sum of One Hundred and Twelve & 50/100 Dollars . . . has granted, bargained, sold and conveyed, and hereby does grant, bargain, sell and convey, unto the said party of the second part its successors and assigns [the property] . . . in as full and ample a manner as the same was possessed and enjoyed by the said Jennie McDonald, deceased, in her lifetime.

*Id.*  On April 2, 1900, ABC acquired yet another portion of Parcel 17 through an administrator's deed from Joseph Adolphus in his role as guardian of Mrs. Alma Josephine Adolphus Moore.  *Id.* at US_000008.  This administrator deed provides, in relevant part, that:

> [T]he said party of the first part, in consideration of the premises, and for and in consideration of the sum of Two Hundred and Twenty Five & 50/100 Dollars . . . has granted, bargained, sold and conveyed, and hereby does grant, bargain, sell and convey, unto the said party of the second part its successors and assigns [the property] . . . in as full and ample a manner as the same was possessed and enjoyed by the said Mrs. Alma Josephine Adolphus Moore, deceased, in her lifetime.

*Id.*

CSXT subsequently acquired Parcel 17 and later transferred this parcel to Mindis Metals, Inc. through a warranty deed on August 7, 1987.  Def. Ex. J at PLF000385.  On January 18, 1988, CSXT issued another warranty deed to Mindis Metals, Inc. for the same property.  *Id.* at PLF000391.

### iv.        The Table 3 Parcels

Lastly, with regards to the Table Three Parcels, ABC acquired Parcel 2 through a warranty deed from G.W. Adair, Jr. in 1899.  Def. Ex. L (first unnumbered entry in schedule of properties).  This parcel runs along what is now Erin Avenue in Fulton County, GA.  *Id.*  The Butler, Leroy Tucker, Daniely, Brittain and Lassek Parcels are located adjacent to the Railroad Line on Erin Avenue and these parcels correspond with Parcel 2.  Def. Ex. D at PLF000182-185, PLF000198-202, PLF000222-226, PLF000254-257, PLF000287-290.

The Carr Parcel corresponds with Parcel 4 on the Interstate Commerce Commission ("ICC") map V2 GA4. *Id.* at PLF000204-208. ABC acquired a property interest in Parcel 4 through a series of warranty deeds granted between 1899 and 1900. Pl. Ex. F-1 at PLF000398 (first unnumbered entry in schedule of properties); *see also* Def. Ex. B at NARA_000032.

### 4.     The STB Proceedings And The NITU

On December 20, 2017, CSXT filed a verified notice of exemption with the STB to abandon its interest in the Railroad Line. Pl. Ex. A at PLF000002; Def. Ex. A. at STB_0000037. On January 3, 2018, the ABI filed a request for interim trail use of the Railroad Line with the STB. Pl. Ex. B at PLF000020-24; *see also* Def. Ex. M at STB_000009.

The STB issued the NITU on February 6, 2018. *See generally* Pl. Ex. C; Def. Ex. M. Thereafter, ABI and CSXT filed a trail use agreement with the STB on May 15, 2018. Pl. Ex. D at PLF000040; Def. Ex. N at STB_000025.

### B.     Procedural Background

On March 6, 2018, plaintiffs filed the complaint in *Brittain, et al. v. United States*, No. 18-342L. *See generally* Compl. On May 25, 2018, and August 24, 2018, plaintiffs filed amended complaints in *Brittain, et al. v. United States*, No. 18-342L. *See generally* 1st Am. Compl.; 2d Am. Compl. On June 4, 2018, plaintiff Lebow Land Company, LLC filed a complaint in a directly related takings action, *Lebow Land Co. v. United States*, No. 18-792L. *See generally* Lebow Compl. On March 4, 2019, the Court consolidated the two cases. *See* Order, dated March 4, 2019.

On April 8, 2019, plaintiffs filed a motion for partial summary judgment on liability and a memorandum in support thereof. *See generally* Pl. Mot.; Pl. Mem. On May 13, 2019, the government filed a response and opposition to plaintiffs' motion for partial summary judgment on liability and a cross-motion for partial summary judgment on standing and title issues. *See generally* Def. Mot. On June 4, 2019, plaintiffs filed a reply in support of their motion for partial summary judgment on liability and a response and opposition to the government's cross-motion for partial summary judgment on standing and title issues. *See generally* Pl. Resp.

On June 24, 2019, the government filed a reply in support of its cross-motion for partial summary judgment on standing and title issues. *See generally* Def. Reply. On July 8, 2019,

plaintiffs filed a sur-reply in support of their motion for partial summary judgment on liability. *See generally* Pl. Sur-Reply.

On September 9, 2019, plaintiffs filed a motion for oral argument. *See generally* Pl. Mot. for Oral Arg. On September 24, 2019, the government filed a response and opposition to plaintiffs' motion for oral argument. *See generally* Def. Resp. for Oral Arg.

These matters having been fully briefed, the Court resolves the pending motions.

## III.   LEGAL STANDARDS

### A.   Jurisdiction

The Tucker Act grants this Court jurisdiction to consider Fifth Amendment takings claims brought against the United States. *See* 28 U.S.C. § 1491; *Morris v. United States*, 392 F.3d 1372, 1375 (Fed. Cir. 2004) ("[T]he Tucker Act provides the Court of Federal Claims exclusive jurisdiction over takings claims for amounts greater than $10,000.").

### B.   RCFC 56 And Summary Judgment

Pursuant to RCFC 56, a grant of summary judgment is appropriate when the pleadings, affidavits and evidentiary materials filed in a case reveal that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Biery v. United States*, 753 F.3d 1279, 1286 (Fed. Cir. 2014). A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. A fact is "material" if it could "affect the outcome of the suit under the governing law . . . ." *Id.*

In resolving motions for summary judgment, the Court will not make credibility determinations and will draw all inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). In doing so, the Court does not weigh the evidence presented, but instead must "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *Agosto v. INS*, 436 U.S. 748, 756 (1978) ("[A trial] court generally cannot grant summary judgment based on its assessment of the credibility of the evidence presented . . . ."); *see also Am. Ins. Co. v. United States*, 62 Fed. Cl. 151, 154 (2004). And so, the Court may only grant summary judgment when "the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party . . . ." *Matsushita*, 475 U.S. at 587.

The above standard applies when the Court considers cross-motions for summary judgment. *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 89 (2014); *see also Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 40 (1st Cir. 2010).  And so, when both parties move for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Abbey v. United States*, 99 Fed. Cl. 430, 436 (2011) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

### C.    Fifth Amendment Takings And "Rails-to-Trails" Cases

A Fifth Amendment takings occurs in a rails-to-trails case when the government, through the issuance of a CITU or NITU, destroys an individual's state law reversionary interest in property underlying a railroad right-of-way.  *Ladd v. United States*, 630 F.3d 1015, 1023-24 (Fed. Cir. 2010) ("The issuance of the NITU is the only event that must occur to 'entitle the plaintiff to institute an action.'  Accrual is not delayed until a trail use agreement is executed or the trail operator takes physical possession of the right-of-way." (citing *Barclay v. United States*, 443 F.3d 1368, 1373 (Fed. Cir. 2006)); *see also Caldwell I*, 391 F.3d 1226, 1233-34 (Fed. Cir. 2004).  "[O]nly persons with a valid property interest at the time of the taking[s] are entitled to compensation."  *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001).  To determine whether a Fifth Amendment takings has occurred in a rails-to-trails case, the Court follows the three-part analysis established by the United States Court of Appeals for the Federal Circuit.  *See Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (citing *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) ("*Preseault II*")).

First, the Court must determine who owned the land at issue at the time of the takings, and specifically, whether the railroad company owned the land in fee simple or held only an easement.  *Id.*  Second, if the railroad company owned only an easement, the Court must determine whether the terms of the easement are limited to use for railroad purposes, or whether the terms include use as a public recreational trail.  *Id.*  Third, if the railroad company's easement is broad enough to encompass recreational trail use, the Court must determine whether the

easement terminated prior to the alleged takings, so that the property owner held a fee simple estate unencumbered by easement at the time of the takings. *Id.*

### D.   Georgia Property Law

To determine whether a railroad held an easement over, or a fee simple interest in, a railroad corridor at the time of an alleged takings, the Court looks to the law of the state in which the property is located. *Preseault II*, 100 F.3d at 1540. Because the Railroad Line at issue in this case is located in the State of Georgia, Georgia law applies. *Preseault I*, 494 U.S. 1, 20-21 (1990) (O'Connor, J., concurring).

At the time that ABC acquired the Railroad Line via condemnation, the 1895 version of the Civil Code of the State of Georgia was in effect. Pl. Ex. I at PLF000361 (railroad charter for ABC, dated October 17, 1899). Section 4683 of that Code provides that:

> Upon the payment by the corporation or person seeking to condemn of the amount of the award and final judgment on appeal, such corporation or person shall become vested with such interest in the property taken as may be necessary to enable the corporation or person taking to exercise their franchise or conduct their business; and whenever the corporation or person shall cease using the property taken for the purpose of conducting their business, said property shall revert to the person from whom taken, his heirs or assigns.

GA. CIV. CODE § 4683 (1895).

The Supreme Court of Georgia has interpreted Section 4683 to impose a restriction when property is acquired by condemnation—namely, that a company would only acquire by condemnation such interest as would be necessary for the exercise of the franchise and the conduct of the business, with a reversion to the owners, their heirs and assigns if the property should cease to be used for conducting that business. *City of Atlanta v. Jones*, 69 S.E. 571 (Ga. 1910); *Georgia Granite R. Co. v. Venable*, 58 S.E. 864, 866 (Ga. 1907). The Supreme Court of Georgia has also recognized that, "[g]enerally, in construing a statute authorizing the taking of private property for public use, it will not be implied that a greater interest or estate can be taken than is necessary to satisfy the language and object of the act; and, if the Constitution and statute are both silent on the subject, usually only an easement can be taken." *Venable*, 58 S.E. at 866.

With regards to the nature of the property interest acquired via condemnation under Georgia law, the Supreme Court of Georgia has held that a company would only obtain an easement in the land condemned and that title would revert to the person from whom the land was taken if the company should cease to use the land.  *See Garner v. Georgia R. & Banking Co.*, 43 S.E. 863, 864 (Ga. 1903); *see also Atlantic Coast Line R. Co. v. Postal Tel. Cable Co.*, 48 S.E. 15, 18 (Ga. 1904) (holding that a telegraph company acquired an easement in the right-of-way of a railway company condemned for the purpose of constructing a telegraph line on the right-of-way).[3]  Georgia courts have also considered several cases that are instructive in determining how to interpret reversionary clauses.  In *Askew v. Spence,* the Supreme Court of Georgia held that an easement was created based upon, among other things, a reversionary clause that provided that "[i]f work is not commenced on the said road in two years, said property is to revert to the party of the first part."  79 S.E.2d 531, 532 (Ga. 1954).  The Supreme Court of Georgia has also held that a deed that grants a railroad a strip of land as a "right-of-way" over the surrounding land typically conveys an easement, such that the railroad is given a right to pass over and use the land.  *See Jackson v. Crutchfield*, 191 S.E. 468, 470-71 (Ga. 1937) (holding that a deed that granted "right-of-way over which to pass" conveyed an easement).

The Supreme Court of Georgia has similarly held that the presence of a reservation in a deed, such as a conveyor's right to cultivate the land up to the right-of-way, offers proof of intent to convey an easement.  *Jackson v. Sorrells*, 92 S.E.2d 513, 514 (Ga. 1956) (holding that a deed that reserved the conveyor's right to "cultivate the land up to the road bed" constituted an easement).  In addition, that court has held that the presence of a qualification, or a stipulation specifying that the property will be used "for railroad purposes," signals that the deed conveys an easement.  *Askew*, 79 S.E.2d at 532; *Crutchfield*, 191 S.E. at 470-71; *Rogers v. Pitchford*, 184 S.E. 623, 624 (Ga. 1936); *see also Latham Homes Sanitation, Inc. v. CSX Transp., Inc.*, 538 S.E.2d 107, 109 (Ga. Ct. App. 2000) (holding that an easement was conveyed to a railroad, when the grantor retained a reversionary interest over the right-of-way if the railroad was never formed.)

---

[3] The Supreme Court of Georgia has not settled the precise question of whether a railroad company obtains via condemnation a fee defeasible or an easement estate.  *See Georgia Granite R. Co. v. Venable*, 58 S.E. 864, 866 (Ga. 1907).  But, that court has made clear that "condemnation does not vest in the company a fee-simple estate."  *Id.*

In other cases, the Supreme Court of Georgia has recognized that the requirement that, "said property shall revert to the Grantor" if the property is no longer used for roadway purposes, creates a fee simple determinable property interest. *Flaum v. Middlebury, Inc.*, 272 S.E.2d 695, 696 (Ga. 1980). The Supreme Court of Georgia has also held that the use of the words "assigns" and "revert" in a conveyance instrument indicates that the parties thereto intended to convey a determinable fee estate. *Georgia, Ashburn, Sylvester & Camilla Ry. Co. v. Johnson*, 174 S.E.2d 895, 897 (Ga. 1970); *see also Giddens v. Barrentine*, 448 S.E.2d 441, 443 (Ga. 1994) (holding that a deed that provides for an immediate reversion of a property interest without any action by the grantor, when the property was no longer used as a railroad, can convey either an easement or a fee simple determinable). And so, the court has, on occasion, held that a reversionary clause indicates an intent to convey a fee simple determinable estate.

Lastly, Georgia law recognizes the doctrine of merger in property law. Specifically, the Code of the State of Georgia contains a merger statute and this statute provides that:

> If two estates in the same property shall unite in the same person in his individual capacity, the lesser estate shall be merged into the greater.

Ga. Code Ann. § 44-6-2 (2019).

The Supreme Court of Georgia has also held that a covenant restricting the use of property—and inserted for the benefit of adjoining land of the grantor—will be extinguished by the subsequent vesting in one person of the title to both tracts of land. *Muscogee Mfg. Co. v. Eagle & Phenix Mills*, 54 S.E. 1028, 1031 (Ga. 1906). And so, the Supreme Court of Georgia has recognized that "where there is a union of an absolute title to and possession of the dominant and servient estates in the same person, it operates to extinguish any such easement absolutely and forever." *Id.* at 1032 (quoting Washburn on Easements (4th Ed.)).

## IV.   LEGAL ANALYSIS

The parties have filed cross-motions for partial summary judgment on liability, standing and title issues on two issues: First, whether CSXT's predecessor-in-interest acquired via condemnation an easement or a fee simple determinable interest in the Railroad Line. Pl. Mem. at 8-17; Def. Reply at 3-5; *see also* Ga. Civ. Code § 4683 (1895). Second, whether CSXT obtained a fee simple interest in the portions of the Railroad Line located adjacent to the Burch,

Lebow, and Sahebdivani Parcels under Georgia law.  Def. Mot. at 10-16; Pl. Resp. at 7-11; Def. Reply at 5-10.

In addition, the government has moved for partial summary judgment in its favor on the issue of whether the owners of the Table Three Parcels have provided sufficient evidence to support their takings claims.  Def. Mot. at 16-17.  Lastly, plaintiffs have moved for oral argument on the parties' cross-motions.  *See generally* Pl. Mot. for Oral Arg.

For the reasons discussed below, the undisputed material facts in this matter show that CSXT's predecessor-in-interest acquired via condemnation an easement for railroad purposes over the Railroad Line.  The undisputed material facts in this matter also show that CSXT subsequently obtained a fee simple interest in the portions of the Railroad Line that are located adjacent to the Burch, Sahebdivani and Lebow Parcels.

In addition, the undisputed material facts show that plaintiffs Isa Brittain; Butler Glidden Cooper, LLC[4]; Steve Carr; Felita A. Daniely; Arthur M. Lassek, III; and Jason Leroy Tucker have not provided sufficient evidence to support their takings claim.  Lastly, a careful review of the parties' briefs and the evidentiary record reveals that oral argument is not necessary to resolve the parties' cross-motions.  And so, the Court:  (1) **DENIES** plaintiffs' motion for partial summary judgment on liability; (2) **GRANTS** the government's cross-motion for partial summary judgment on standing and title issues; and (3) **DENIES** plaintiffs' motion for oral argument.

### A.     The Railroad Acquired An Easement Via Condemnation

As a preliminary matter, the undisputed material facts in this matter show that CSXT's predecessor-in-interest acquired an easement over the Railroad Line under Georgia law.  The parties agree that CSXT's predecessor-in-interest—the Atlanta Beltline Company—acquired the Railroad Line via condemnation pursuant to Section 4683 of the 1895 version of the Civil Code of the State of Georgia.  Pl. Mem. at 9; Def. Reply at 1.  But, the parties disagree about the

---

[4] The Court does not address the issue of whether plaintiff Butler Glidden Cooper, LLC has provided sufficient evidence to support its takings claim for Parcel No. 14008800020152.  Def. Mot. at 16; Def. Ex. D at PLF000170.

nature of the property interest that ABC acquired under this condemnation statute.  Pl. Mem. at 8-10; Def. Reply at 2-5.

Plaintiffs argue that ABC acquired a fee simple determinable estate in the Railroad Line, because Section 4683 limits the property interest that ABC could obtain via condemnation to such an interest as is necessary for the execution of the franchise or business.  Pl. Mem. at 10-17; Pl. Sur-Reply at 2-6.  The government counters that ABC acquired an easement pursuant to Section 4683, because the text of the statute and Georgia case law support interpreting Section 4683 to convey an easement.  Def. Reply at 2-5.  For the reasons that follow, the Court agrees.

As an initial matter, the Court begins its interpretation of Section 4683 by considering the plain language of this statute.  *Hymas v. United States*, 810 F.3d 1312, 1324 (Fed. Cir. 2016) ("[s]tatutory interpretation begins with the language of the statute" (internal citations omitted)).  The text of Section 4683 indicates that ABC acquired a railroad easement via condemnation for several reasons.

First, Section 4683 provides that:

> Upon the payment by the corporation or person seeking to condemn of the amount of the award and final judgment on appeal, *such corporation or person shall become vested with such interest in the property taken as may be necessary to enable the corporation or person taking to exercise their franchise or conduct their business*; and whenever the corporation or person shall cease using the property taken for the purpose of conducting their business, said property shall revert to the person from whom taken, his heirs or assigns.

GA. CIV. CODE § 4683 (1895) (emphasis supplied).  And so, Section 4683 plainly limits the nature of the property interest conveyed via condemnation to "such interest in the property taken as may be necessary to enable the corporation or person taking to exercise their franchise or conduct their business."  *Id.*

This statute similarly limits the nature of the property interest conveyed via condemnation by requiring that the property acquired via condemnation "shall revert to the person from whom taken, his heirs or assigns," if the party acquiring the property ceases to use the property for the purpose of conducting their business.  *Id.*  And so, the Court reads Section 4683 to restrict the property interest acquired by ABC to such an interest as would have been necessary for the railroad company to conduct its business.  *Id.*; *see also City of Atlanta v. Jones*,

69 S.E. 571 (Ga. 1910); *Georgia Granite R. Co. v. Venable*, 58 S.E. 864, 866 (Ga. 1907) (holding that Section 4683 provides a restriction that a company would only acquire such an interest as would be necessary for the exercise of the franchise and the conduct of the business, with a reversion to the owners, their heirs and assigns, if the property should cease to be used for conducting the business).

The Court also agrees with the government that Georgia case law supports a finding that the precise nature of a property interest acquired by ABC under Section 4683 is an easement for railroad purposes.  In this regard, the Supreme Court of Georgia has held that, when "the Constitution and statute are both silent on the subject, usually only an easement can be taken" via condemnation.  *Venable*, 58 S.E. at 866.  Georgia courts have also recognized on several occasions that an easement is acquired when private property is acquired via condemnation.  *Id*.; *see also Garner v. Georgia R. & Banking Co*., 43 S.E. 863, 864 (Ga. 1903) (holding that, upon the payment of the award of the appraisers, the company would only obtain an easement in the land condemned, and, if at any time the company should cease to use the land, the title would revert to the person from whom it was taken); *Atlantic Coast Line R. Co. v. Postal Tel. Cable Co*., 48 S.E. 15, 18 (Ga. 1904) (holding that a telegraph company acquired an easement in the right-of-way of a railway company condemned for the purpose of constructing a telegraph line on the right-of-way); *see also Jackson v. Crutchfield*, 191 S.E. 468, 470-71 (Ga. 1937) (holding that a deed that grants a railroad a strip of land as a "right-of-way" over the surrounding land typically conveys an easement); *Askew v. Spence*, 79 S.E.2d 531, 532 (Ga. 1954) (holding that the presence of a qualification, or a stipulation specifying that the property will be used "for railroad purposes," signals that the deed conveys an easement).

In addition, the Court's conclusion that an easement for railroad purposes has been conveyed to ABC is also supported by other language in Section 4683 which requires that "said property shall revert to the person from whom taken, his heirs or assigns," if the condemning entity ceases using the property for the purpose of conducting their business.  GA. CIV. CODE § 4683 (1895).  Georgia courts have recognized that this kind of a reversionary language indicates the parties' intent to convey an easement.  For example, in *Askew v. Spence,* the Supreme Court of Georgia held that an easement was created based upon, among other things, conveyance language that provided that "[i]f work is not commenced on the said road in two years, said property is to revert to party of the first part."  79 S.E.2d at 532.  In *Latham Homes Sanitation,*

*Inc. v. CSX Transp., Inc.*, the Court of Appeals of Georgia similarly concluded that an easement was conveyed to a railroad when the grantor retained a reversionary interest over the right-of-way if the railroad was never formed. 538 S.E.2d 107, 109 (Ga. Ct. App. 2000).

Reading Section 4683 to convey an easement for railroad purposes also comports with the reason that ABC acquired a property interest in the Railroad Line. The evidentiary record before the Court makes clear that ABC sought to condemn the property along the Railroad Line "*for the purpose of building, maintaining and operating a railroad*." Pl. Ex. H-1 at PLF000374 (emphasis supplied); *see also* Pl. Ex. H-2 at PLF000316 (stating that ABC "seeks to condemn for the purpose of building, maintaining and operating a railroad"); *see also Easement*, Black's Law Dictionary (11th ed. 2019) (defining a land easement as "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a specific limited purpose."). The Court also observes that the parties have stipulated that CSXT acquired a railroad easement over other portions of the Railroad Line that are not the subject of their cross-motions. *See* Joint Status Report, Feb. 28, 2019; *see also* Stipulations Regarding Title Matters, April 1, 2019.

Given this, the Court concludes that the undisputed material facts in this case show that ABC acquired an easement for railroad purposes over the Railroad Line under Georgia's condemnation statute.[5] And so, the Court **DENIES** plaintiffs' motion for partial summary judgment and **GRANTS** the government's cross-motion for partial summary judgment on this threshold issue.

### B.  CSXT Obtained A Fee Interest In The Portions Of Railroad Line Adjacent To The Burch, Sahebdivani And Lebow Parcels

Having determined that ABC acquired an easement for railroad purposes under the Georgia condemnation statute, the Court turns to the question of whether CSXT held this easement, or a fee simple interest, with regards to the portions of the Railroad Line located adjacent to the Burch, Sahebdivani and Lebow Parcels. For the reasons discussed below, the

---

[5] Plaintiffs correctly observe that Georgia courts have, at times, interpreted reversionary language to indicate the intent of the parties to convey a fee simple determinable estate. Pl. Mem. at 14-17; Pl. Resp. at 3-4; Pl. Sur-Reply at 2-6. But, plaintiffs do not identify—and the Court is not aware of—any case in which a Georgia court has interpreted Section 4683 to convey a fee simple determinable estate. *See generally* Pl. Mem.; Pl. Resp.; Pl. Sur-Reply.

undisputed material facts in this matter show that CSXT held a fee simple interest in the portions of the Railroad Line that are located adjacent to the Burch, Sahebdivani and Lebow Parcels at the time of the issuance of the NITU.

It is well-established under Georgia law that, "[i]f two estates in the same property shall unite in the same person in his individual capacity, the lesser estate shall be merged into the greater." GA. CODE ANN. § 44-6-2 (2019). And so, the Supreme Court of Georgia has recognized that, "where there is a union of an absolute title to and possession of the dominant and servient estates in the same person, it operates to extinguish any such easement absolutely and forever." *Muscogee Mfg. Co. v. Eagle & Phenix Mills*, 54 S.E. 1028, 1032 (Ga. 1906) (quoting Washburn on Easements (4th Ed.)).

Pursuant to this doctrine of merger, when a property owner holds an easement on neighboring property—and later acquires title to that neighboring property—the easement automatically terminates by operation of law due to the merger of title. And so, if it can be established that CSXT's predecessor-in-interest acquired the title to any property that is located adjacent to the Railroad Line, the easement that ABC acquired via condemnation automatically terminates and merges with that fee estate. The government makes such a showing here with regards to the Burch, Sahebdivani and Lebow Parcels.

### 1. CSXT Owned The Portions Of The Railroad Line Located Adjacent To The Burch Parcel

First, the undisputed material facts show that CSXT's predecessor-in-interest, ABC, acquired the portion of the Railroad Line located adjacent to the Burch Parcel in fee simple. In this regard, it is undisputed that on May 19, 1906, ABC acquired a fee simple interest in Parcel 25—a parcel of land that is located adjacent to the Railroad Line and includes the property that is currently owned by plaintiff Anderson B. Burch. Def. Ex. C at US_000018 (deed to ABC for Parcel 25 in fee simple, dated May 19, 1906); Pl. Ex. E at PLF000189-190; Def. Ex. D at PLF000189-190 (Burch deed and property map).

Once ABC acquired Parcel 25, the easement that ABC acquired via condemnation over the portion of the Railroad Line located adjacent to Parcel 25 merged into the fee simple estate under Georgia law. *See* GA. CODE ANN. § 44-6-2 (2019); *Muscogee Mfg. Co.*, 54 S.E. at 1032. And so, the undisputed material facts make clear that ABC acquired a fee simple estate in the

portion of the Railroad Line located adjacent to Parcel 25, including the portion of the Railroad Line located adjacent to the Burch Parcel.  Def. Ex. C at US_000018; *see also Muscogee Mfg. Co.*, 54 S.E. at 1032.

The government has also shown that CSXT later obtained ABC's fee simple interest in the portion of the Railroad Line located adjacent to Parcel 25 and that ABC held this interest on the date that the STB issued the NITU.  In this regard, the undisputed material facts show that ABC conveyed its fee simple interest in Parcel 25—and its fee estate in the portion of the Railroad Line located adjacent to this parcel—to the Atlanta and West Point Railroad Company on September 8, 1914.  Def. Ex. E at US_000021 (deed conveying, in relevant part:  "[a]ll and singular the lines of railroad constructed and to be constructed . . . by whatever title the same may be owned or held, and also all the land, tenements, hereditaments, leasehold estates, ways and rights of way now owned, held and possessed by said Atlanta Belt Line Company . . . to [the Atlanta and West Point Railroad Company] its successors and assigns in fee simple forever."); *see also* Pl. Ex. G at PLF000046.  It is also undisputed that, when the Atlanta and West Point Railroad Company sold Parcel 25, the railroad company retained its fee estate in the portion of the Railroad Line located adjacent to that parcel.  Def. Mot. at 12 (citing Def. Ex. F at US_000057-58); *see also* Pl. Resp. at 4-12 (showing that plaintiffs do not dispute that the Atlanta and West Point Railroad Company retained its fee estate in the section of the Railroad Line located adjacent to Parcel 25).

The undisputed material facts also show that the Atlanta and West Point Railroad Company subsequently merged into Seaboard System Railroad, Inc. on June 30, 1986, and that Seaboard System Railroad, Inc. later changed its name to CSXT on July 1, 1986.  Def. Ex. G at US_000064.  Given this, the undisputed material facts make clear that CSXT obtained a fee simple interest in the portion of the Railroad Line located adjacent to the Burch Parcel and that CSXT owned this portion of the Railroad Line when the STB issued the NITU on February 6, 2018.  *Id.*; Def. Ex. F at US_000057-58; *see also Ellamae Phillips Co. v. United States*, 564 F.3d 1367, 1373 (Fed. Cir. 2009) (stating that, first, the Court must determine who owned the land at issue at the time of the takings, and specifically, whether the railroad company owned the land in fee simple or held only an easement (citing *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) ("*Preseault II*")).

### 2.    CSXT Owned The Portions Of The Railroad Line Located Adjacent To The Sahebdivani Parcel

For similar reasons, the undisputed material facts show that CSXT held a fee simple interest in the portion of the Railroad Line located adjacent to the Sahebdivani Parcel at the time of the issuance of the NITU.

The undisputed material facts show that, in 1899 and 1900, respectively, ABC acquired the title to two parcels of land—Parcels 13 and 18—that are located adjacent to the Railroad Line and include the Sahebdivani Parcel.  Def. Ex. I at US_000015 (deed to ABC for Parcel 13 in fee simple, dated January 9, 1900); Def. Ex. E at US_000041 (deed conveying fee interest in Parcel 18 to ABC on October 31, 1899).  Once ABC acquired these parcels in fee simple, the easement over the portion of the Railroad Line located adjacent to these parcels was extinguished and ABC acquired a fee simple estate in these portions of the Railroad Line under Georgia law.  *See* GA. CODE ANN. § 44-6-2 (2019); *Muscogee Mfg. Co.*, 54 S.E. at 1032.

The undisputed material facts also show that CSXT later obtained this fee simple interest.  As discussed above, ABC conveyed its fee simple interest in the portions of the Railroad Line located adjacent to Parcels 13 and 18 to the Atlanta and West Point Railroad Company on September 8, 1914.  Def. Ex. E at US_000021 (deed conveying, in relevant part:  "[a]ll and singular the lines of railroad constructed and to be constructed . . . by whatever title the same may be owned or held, and also all the land, tenements, hereditaments, leasehold estates, ways and rights of way now owned, held and possessed by said Atlanta Belt Line Company . . . to [the Atlanta and West Point Railroad Company] its successors and assigns in fee simple forever."); *see also* Pl. Ex. G at PLF000046.  After the Atlanta and West Point Railroad Company merged into Seaboard System Railroad, Inc.—and Seaboard System Railroad, Inc. changed its name to CSXT—CSXT acquired and retained this fee simple interest.  Def. Ex. G at US_000064.  And so, again, the undisputed material facts make clear that CSXT held a fee simple interest in the portion of the Railroad Line located adjacent to the Sahebdivani Parcel when the STB issued the NITU.  *Id.*; *see also Ellamae*, 564 F.3d at 1373.

### 3.    CSXT Owned The Portions Of The
###        Railroad Line Located Adjacent To The Lebow Parcel

Lastly, the undisputed material facts also show that CSXT obtained a fee simple interest in the portions of the Railroad Line located adjacent to the Lebow Parcel.

There is no dispute among the parties that ABC acquired the title to Parcel 17—a parcel of land that is located adjacent to the Railroad Line and includes the property that is currently owned by plaintiff Lebow Land Company, LLC.  Def. Mot. at 14-16 (citing Def. Ex. Q at US_000016-17) (deeds to ABC for two portions of Parcel 17 in fee simple, dated January 23, 1900); Pl. Resp. at 4 (stating that plaintiffs do not dispute that one or more of CSXT's predecessors-in-interest of the Railroad Line acquired portions of the land currently owned by plaintiffs).[6]  Once ABC acquired Parcel 17, its railroad easement over this parcel was extinguished and ABC obtained a fee simple estate in the portions of the Railroad Line located adjacent to Parcels 17 under Georgia law.  *See* GA. CODE ANN. § 44-6-2 (2019); *Muscogee Mfg. Co.*, 54 S.E. at 1032.

The undisputed material facts also show that CSXT later obtained this fee simple interest, because ABC conveyed its fee simple interest in the portion of the Railroad Line located adjacent to Parcel 17 to the Atlanta and West Point Railroad Company on September 8, 1914. Def. Ex. E at US_000021 (deed conveying, in relevant part:  "[a]ll and singular the lines of railroad constructed and to be constructed . . . by whatever title the same may be owned or held, and also all the land, tenements, hereditaments, leasehold estates, ways and rights of way now owned, held and possessed by said Atlanta Belt Line Company . . . to [the Atlanta and West Point Railroad Company] its successors and assigns in fee simple forever."); *see also* Pl. Ex. G at PLF000046.  As discussed above, the Atlanta and West Point Railroad Company subsequently

---

[6] The source deed conveying a portion of Parcel 17 to Jennie McDonald is not included in the evidentiary record.  But, it is undisputed that ABC acquired a portion of Parcel 17 on April 2, 1900.  Def. Mot. at 14-15; Def. Ex. Q at (US_000007) (deed to ABC for a portion of Parcel 17 in "as full and ample a manner as the same was possessed and enjoyed by the said Jennie McDonald, deceased, in her lifetime," dated April 2, 1900); *see generally* Pl. Resp.  The source deed conveying a portion of Parcel 17 to Mrs. Alma Josephine Adolphus Moore is also not included in the evidentiary record.  But, it is again undisputed that ABC acquired this portion of Parcel 17 in fee on April 26, 1900.  Def. Ex. Q at US_000008 (deed to ABC for a portion of Parcel 17 in "as full and ample a manner as the same was possessed and enjoyed by the said Mrs. Alma Josephine Adolphus Moore, deceased, in her lifetime," dated April 26, 1900); *see also* Pl. Ex. E at 16-24.

merged into Seaboard System Railroad, Inc., and Seaboard System Railroad, Inc. changed its name to CSXT, resulting in CSXT obtaining this fee simple interest.  Def. Ex. G at US_000064.

The undisputed material facts also show that CSXT retained its fee simple interest in the portion of the Railroad Line located adjacent to Parcel 17 when the STB issued the NITU on February 6, 2018.  Def. Mot. 6-9; Pl. Mem. 5-6.  In this regard, there is no dispute that CSXT transferred Parcel 17 to Mindis Metals, Inc. on August 7, 1987, and January 18, 1988, respectfully.  Def. Mot. at 8, 15; *see generally* Pl. Resp.  But, the parties also agree that CSXT retained most of its fee simple interest in the portion of the Railroad Line located adjacent to Parcel 17 in connection with these transactions.  Def. Ex. J at PLF000385-396[7]; *see also* Pl. Resp. at 4-12; Pl. Sur-Reply at 1-6 (showing that plaintiffs do not dispute that CSXT retained its interest in Parcel 17).  And so, the undisputed material facts show that CSXT owned the portion of the Railroad Line located adjacent to the Lebow Parcel when the STB issued the NITU.  Def. Resp. at 14-16; *see also Ellamae*, 564 F.3d at 1373.

The Court is also not persuaded by plaintiffs' argument that the Court should not apply the Georgia doctrine of merger to the facts of this case.  Pl. Resp. at 7-12.  Plaintiffs argue in their motion for partial summary judgment that the doctrine of merger should not apply here, because ABC did not own the entire Railroad Line and all of the adjoining land simultaneously. *Id.* at 8.  But, plaintiffs do not cite any case law in Georgia to support this contention.[8]  *Id.*; *see also* Def. Reply at 7.

Plaintiffs' argument that the doctrine of merger is inapplicable here, because ABC could not possess absolute title to the right-of-way over the Railroad Line is equally unpersuasive.  *Id.* at 7-8.  As discussed above, the Court reads the Georgia condemnation statute to create an easement for railroad purposes, and this statute does not contain any language that would prevent

---

[7] A review of the conveyance instruments for these transactions shows that CSXT may have conveyed a small portion of the Railroad Line to Mindis Metals, Inc.  Def. Ex. J at PLF000388, PLF000394 (containing language in the Parcel D description appearing to grant a small portion of the Railroad Line to Mindis Metals, Inc. and referring to the rest of the Line as "Grantor's track").

[8] Plaintiffs' argument that it would be contrary to public policy to apply the doctrine of merger when an easement has been acquired via condemnation is also misguided.  Pl. Resp. at 9-11.  Such policy considerations are appropriately left to the Georgia State Legislature.

an easement acquired via condemnation from converting into a fee simple estate under the doctrine of merger, as plaintiffs suggest.  *See* GA. CIV. CODE § 4683 (1895).

Because the undisputed material facts in this case show that CSXT obtained a fee simple interest in the portions of the Railroad Line located adjacent to the Burch, Sahebdivani and Lebow Parcels, and that CSXT owned these portions of the Railroad Line when the STB issued the NITU on February 6, 2018, the Court **DENIES** plaintiffs' motion for partial summary judgment on liability and **GRANTS** the government's cross-motion for partial summary judgment on standing and title issues with respect to plaintiffs Burch, Sahebdivani and Lebow Land Company, LLC.

### C.     The Owners Of The Table Three Parcels Have Not Provided Sufficient Evidence To Support Their Claims

The Court also agrees with the government that the owners of the Table Three Parcels have not provided sufficient evidence to support their takings claims in this case.

To determine whether a Fifth Amendment takings has occurred in this rails-to-trails case, the Court must determine who owned the land at issue at the time of the alleged takings and plaintiffs bear the burden of proving that they owned the land at issue in fee at the time of the alleged takings.  *Ellamae*, 564 F.3d at 1373 (citing *Preseault II*, 100 F.3d at 1533).  It is undisputed that plaintiffs have not provided the government with the source deeds relevant to the Butler, Leroy Tucker, Daniely, Brittain, Lassek, and Carr Parcels to establish the ownership of these parcels. Def. Mot. at 16-17; Pl. Resp. at 2.  A review of the evidentiary record also reveals that plaintiffs have not included any of the source deeds for the Table Three Parcels in their claims book.  *See* Def. Ex. D at PLF000182-185, PLF000198-202, PLF000204-208, PLF000222-226, PLF000254-257, PLF000287-290.  Given this, the Court must deny plaintiffs' takings claims related to the Table Three Parcels, because plaintiffs have not met their burden to show that they owned these parcels at the time of the alleged takings.  And so, the Court **GRANTS** the government's cross-motion for partial summary judgment on standing and title issues with respect to plaintiffs Isa Brittain, Butler Glidden Cooper, LLC, Steve Carr, Felita A. Daniely, Arthur M. Lassek, III and Jason Leroy Tucker.

**D.      Oral Argument On the Parties' Cross-Motions Is Not Warranted**

As a final matter, plaintiffs have moved for oral argument on the parties' cross-motions. *See generally* Pl. Mot. for Oral Arg.  A careful reading of these cross-motions and the evidentiary record in this matter reveals, however, that oral argument is not necessary for the Court to resolve the parties' cross-motions.  And so, the Court **DENIES** plaintiffs' motion for oral argument.

## V.      CONCLUSION

In sum, the undisputed material facts in this matter show that ABC acquired an easement for railroad purposes under Georgia's condemnation statute.  The undisputed material facts also show that CSXT obtained a fee simple interest in the portions of the Railroad Line located adjacent to the Burch, Sahebdivani and Lebow Parcels and that CSXT owned these portions of the Railroad Line when the STB issued the NITU at issue in this takings case.  In addition, the undisputed material facts show that plaintiffs have not met their burden to show that they owned the land located adjacent to the Railroad Line at the time of the alleged takings with respect to the Table Three Parcels.  Lastly, a careful review of the parties' briefs and the evidentiary record makes clear that oral argument is not necessary to resolve the parties' cross-motions.  And so, for the foregoing reasons, the Court:

1. **DENIES** plaintiffs' motion for partial summary judgment on liability;

2. **GRANTS** the government's cross-motion for partial summary judgment on standing and title issues; and

3. **DENIES** plaintiffs' motion for oral argument.

In addition, the Court **DIRECTS** the parties to **FILE** a joint status report stating their respective views on how this matter should proceed, in light of the Court's ruling on their cross-motions for partial summary judgment, on or before **January 6, 2020**.

Each party to bear their own costs.

**IT IS SO ORDERED.**

s/ Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
Judge
